IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| **DREAMA F. MILLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:10-01231** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Dreama F. Miller, (hereinafter referred to as "Claimant"), filed an application for DIB on February 5, 2008 (protective filing date), alleging disability as of May 1, 2005, due to "arthritis in both knees, fibromyalgia, torn right rot[ator] cuff, and bi-polar [disorder]." (Tr. at 10, 101-03, 149.) The claim was denied initially and on reconsideration. (Tr. at 51-53, 60-62.) On July 24, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 63-64.) The hearing was held on November 13, 2009, before the Honorable Geraldine H. Page. (Tr. at 20-48.) By decision dated January 19, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-19.) The ALJ's decision became the final decision of the Commissioner on August 19, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) On

Case 1:10-cv-01231 Document 14 Filed 03/30/12 Page 2 of 14 PageID #: 276

October 19, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas

> (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2010).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since May 1, 2005, her alleged onset date. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from obesity, osteoarthritis, bursitis, and fibromyalgia, which were severe impairments. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional work as follows:

> [C]laimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, she can lift up to twenty pounds occasionally and ten pounds frequently; can stand, walk, and/or sit six hours each in an eight hour day; can occasionally climb ramps/stairs, balance, kneel, crawl, stoop, and crouch; must avoid exposure to extreme temperatures, excess humidity, pollutants and irritants; should not work around hazardous machinery, unprotected heights, or on vibrating surfaces; and should not climb ladders, ropes, or scaffolds.

(Tr. at 14, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as a dishwasher, food preparation worker, and food service worker. (Tr. at 18, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ

concluded that Claimant could perform jobs such as a packer, an assembler, and an inspector/tester/sorter, at the light level of exertion. (Tr. at 19.) On these bases, benefits were denied. (Tr. at 19, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 27, 1958, and was 51 years old at the time of the administrative hearing, November 13, 2009. (Tr. at 18, 23, 101.) Claimant had a high school education and was able to communicate in English. (Tr. at 18, 24, 148, 153.) In the past, she worked as a dishwasher, food prep worker, and food service worker. (Tr. at 18, 42-43, 149-51.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's credibility. (Document No. 11 at 7-12.) Claimant asserts that the ALJ failed "to fairly examine and consider the conditions with which [Claimant] suffers, and the extent and manner in which they impact her functional abilities. (Id. at 7.) Specifically, she asserts that the ALJ limited her credibility analysis to a finding that Claimant's activities of daily living were not significantly limited and that no medical doctor gave Claimant disabling limitations. (Id. at 8.) Regarding her activities of daily living, Claimant asserts that the ALJ's description and consideration of them was not an accurate and fair characterization of those activities. (Id.) She contends that the ALJ "selectively parsed information" from the various documents reporting Claimant's activities. (Id. at 9.) Though Claimant reported several activities at various times, the ALJ failed to acknowledge that they were limited by factors such as Claimant's vision. (Id. at 10-11.) Regarding the ALJ's finding that no medical doctor assigned any disabling limitations, Claimant asserts that the ALJ failed to analyze "the medical evidence and the extent to which it supported or detracted from [Claimant's] complaint of limitations." (Id. at 12.)

In response, the Commissioner asserts that contrary to Claimant's allegation, the ALJ "thoroughly and accurately discussed all the medical evidence, and explained why 'the objective evidence of record [did] not support [Claimant's] allegations." (Document No. 13 at 12.) The Commissioner notes that the ALJ relied on Dr. Saikali's treatment notes, the consultative

7

examination report from Ms. Smith, the treatment records from Bluestone Health Center, the clinical records from Dr. Raval, the assessment completed by nurse practitioner Hall, and the opinions of Drs. Gomez and Lambrechts. (Id. at 12-15.) Regarding Claimant's allegations concerning her activities of daily living, the Commissioner asserts that Claimant is asking the Court to re-weigh the evidence in a way that achieves a result more favorable to her. (Id. at 16.) The Commissioner asserts that the ALJ fairly considered and accurately described Claimant's activities and her complaints. (Id. at 17-18.) Consequently, the ALJ properly determined that the objective evidence of record did not support Claimant's allegations of totally disabling impairments, that her self-reported activities were not significantly limited as alleged, and that no physician indicated Claimant had disabling limitations. (Id. at 17.) Accordingly, the Commissioner contends that the ALJ's credibility assessment is supported by substantial evidence of record. (Id. at 17-18.)

Analysis.

Pain and Credibility Assessment:

Claimant alleges that the ALJ improperly assessed her pain and credibility. A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2010); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints

may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2010). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2010).

> SSR 96-7p repeats the two-step regulatory provisions:
>
>> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
>> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a

10

claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15-16.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 16.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 16-17.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 16.)

In assessing Claimant's pain and credibility, the ALJ summarized Claimant's activities as reported at various times. (Tr. at 15-16.) The ALJ noted that in her Function Report dated February 27, 2008, Claimant reported that she did household chores, prepared meals, took care of her personal

11

needs, watched television, shopped, played games on the computer, visited family, and took care of her granddaughter. (Tr. at 15, 132-39.) Due to blurred vision, Claimant reported that she did not drive often and that she used only reading glasses. (Tr. at 15, 135.)

At the administrative hearing, Claimant testified that she experienced difficulty walking, standing, and using her hands. (Tr. at 15, 28, 30, 35-36.) She testified that she could not lift even a gallon of milk and that when using her hands, they became tingly and numb. (Tr. at 15, 33.) She acknowledged that she played card games on the computer, but no longer did housework activities, except sweeping and doing dishes. (Tr. at 16, 33-34.) Claimant also testified that she no longer did her activities "as good as [she] should." (Tr. at 15, 35.)

The ALJ also determined that the medical evidence of record did not support Claimant's allegations. (Tr. at 16.) The ALJ relied on the treatment notes from Dr. Saikali, Claimant's rheumatologist in September and October, 2007. (Id.) Dr. Saikali noted Claimant's reports of generalized aches and pains in the neck, shoulders, and arm, associated with stiffness and soreness. (Tr. at 16, 146-48.) He also noted that the x-rays of Claimant's knees revealed only mild early osteoarthritis with minimal narrowing and the x-rays of her shoulders demonstrated only mild narrowing of the subacromial space. (Id.) Contrary to Claimant's allegation, Dr. Saikali diagnosed bursitis and only noted that if her symptoms persisted, it would be appropriate to consider a possible rotator cuff injury. (Id.) A rotator cuff injury therefore, was never diagnosed.

The ALJ acknowledged the consultative examination report of Ms. Smith, a licensed psychologist, in April, 2008. (Tr. a 16, 159-64.) On mental status exam, Claimant was polite and cooperative, had a dysphoric mood and a slightly constricted affect, average judgment, moderately deficient remote memory, and mildly deficient concentration. (Id.) Based on Claimant's subjective

12

complaints, Ms. Smith diagnosed moderate major depressive disorder and generalized anxiety disorder. (Id.) Ms. Smith noted activities of daily living that were consistent with those described above. (Id.)

Next, the ALJ summarized Claimant's treatment notes at Bluestone Health Center from July, 2008, through June, 2009. (Tr. at 16-17, 181-92.) Contrary to Dr. Saikali's notes, Claimant reported that she had a rotator cuff tear. (Tr. at 16, 186.) She was prescribed Elavil for sleep, mood, and fibromyalgia and Ultram for pain. (Tr. at 17, 184.) The examination notes essentially were normal. (Id.)

The ALJ then acknowledged the diagnosis of neuofibromatosis from Dr. Raval, a neurologist, as well as his near normal exam findings. (Tr. at 17, 218-19.) Regarding Nurse Practitioner Hall, the ALJ accorded her opinions little weight because psychological evaluations revealed no significant limitations and because she was not a mental health professional. (Tr. at 17, 216-17.) As the Commissioner notes, Nurse Practitioner Hall also was not an acceptable medical source. See 20 C.F.R. § 404.1513(a); SSR 06-03p, 2006 WL 2329939, at *2.

Finally, the ALJ cited to the opinions of the state agency medical consultants, Drs. Gomez and Lambrechts, who opined that Claimant was capable of performing medium exertional level work. (Tr. at 17, 151-58, 180.) The ALJ nevertheless, determined that the evidence of record was more consistent with light level work. (Tr. at 17.) She found that nothing in the record suggested that Claimant was unable to stand or walk for prolonged periods; that her osteoarthritis in the knees was mild; and that her activities were consistent with light work.

Based on the foregoing, the Court finds that the ALJ's pain and credibility assessment was in accordance with the rules and regulations. The ALJ thoroughly discussed the objective medical

evidence of record, as well as Claimant's subjective complaints. She found that Claimant was not as limited as she alleged. The ALJ's decision is supported by substantial evidence of record. Accordingly, the Court finds that Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2012.

R. Clarke VanDervort
United States Magistrate Judge